UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| MERCEDEZ MCDOWELL, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:17-cv-02377-JPH-DML |
| SOUTHWEST AIRLINES CO., | ) ) ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Mercedez McDowell alleges that she was subjected to sexual harassment during her employment as a flight attendant for Southwest Airlines. She further alleges that Southwest retaliated against her for filing a charge of discrimination with the EEOC by making her work more weekends and denying her medical leave. Southwest has moved for summary judgment on the claims. For the reasons explained below, the Court **GRANTS** Southwest's motion. Dkt. [33].

**I.
Facts and Background**

The Court views and recites the evidence in the light most favorable to Ms. McDowell and draws all reasonable inferences in her favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Ms. McDowell started working for Southwest as a flight attendant around May 2014. Dkt. 43-1 ¶ 2. She alleges she was subjected to nine incidents of sexual harassment between 2015 and 2018.

1

**A.     Incident # 1**

Sometime in 2015, dkt. 35-1 at 68:14-21 (McDowell Dep.), a male flight attendant described his sexual experiences to Ms. McDowell and told her that he could make her have an orgasm. Dkt. 35-1 at 77 (McDowell Dep. Ex. 1). He then called her hotel room repeatedly that night. *Id.*

**B.     Incident # 2**

On August 16, 2016, Ms. McDowell was sitting in a jump seat during a turbulent flight when a male employee told her that if there was turbulence, she could "catch him" with her body. Dkt. 35-1 at 124 (McDowell Dep. Ex. 7). He then acted like there was turbulence, laid his torso across her lap, and asked if he could hold on to her. *Id.*

**C.     Incident # 3**

Also on August 16, 2016, a pilot, upon hearing that Ms. McDowell's first name was Mercedez, said "Mercedez. I own one and it rides well." Dkt. 35-1 at 77, 125 (McDowell Dep. Ex. 8).

**D.     Incident # 4**

Nine days later, an elderly female passenger whispered something in Ms. McDowell's ear. *Id.* at 77, 125. Since it looked like the elderly woman kissed Ms. McDowell, a pilot asked "[a]re you giving out kisses?" *Id.* She said no and turned around. *Id.* The pilot then "placed his hand on her buttock," dkt. 43 at 4, and said "sorry, that was the best thing to happen all day," dkt. 35-1 at 125.

### E. Ms. McDowell's EEOC Charge

On September 1, 2016, Ms. McDowell filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she was "subjected to unwelcome sexual advances, sexual harassment, and a hostile work environment based on sex" when working at Southwest. *Id.* at 77. She reported the four incidents above and claimed that they were causing her anxiety which required mental-health counseling. *Id.* at 77-78.

### F. Additional Incidents

After filing her EEOC charge, Ms. McDowell recalled or experienced other incidents of alleged harassment that she did not report to the EEOC. These incidents include:

- **Incident # 5:** Sometime during her first six months on the job, a male pilot placed his hand on Ms. McDowell's thigh when speaking to her. *Id.* at 118 (McDowell Dep. Ex. 5).

- **Incident # 6:** In December 2015, a male passenger reached toward the midsection of her apron and grabbed peanuts. *Id.*

- **Incident # 7:** In February 2017, a flight attendant hugged her, kissed her on the cheek, made sexual innuendos, massaged her shoulders, touched her leg, and implied that she was "hot." *Id.* at 118, 127-28 (McDowell Dep. Ex. 11).

- **Incident # 8:** In September 2017, a pilot told Ms. McDowell that he was not the official captain for the flight, but he could "be your captain if you wanted me to," adding that he was "usually PG." *Id.* at 119-20.

3

- **Incident # 9:** In May 2018, a pilot refused to give her the flight briefing, choosing instead to explain it to the other flight attendants only. *Id.* at 120.

Ms. McDowell further alleges that Southwest encouraged sexual harassment because its flight-attendants' lounge has posters that showcased female flight attendants' legs and breasts while male flight attendants were shown in pants and button-up shirts. Dkt. 43-1 ¶ 23.

### G. Ms. McDowell's Schedule Changes

Sometime after filing her charge with the EEOC, Ms. McDowell noticed that her "work pattern changed." *Id.* ¶ 11. Before filing the charge, she typically had at least one Saturday or Sunday off. *Id.* After filing the charge, she was frequently scheduled to work or be on call all weekend while less senior flight attendants had the weekend off. *Id.* In 2018, she was given a less-favorable schedule three months in a row. *Id.* ¶ 12.

### H. Ms. McDowell's Leave

In May 2016, Ms. McDowell applied for leave under the Family Medical Leave Act ("FMLA") due to her allergies. Dkt. 35-2 ¶ 20; dkt. 35-1 at 141 (McDowell Dep. Ex. 14). Southwest approved her request and granted her leave that would start May 2, 2016, and end on March 28, 2017. Dkt. 35-1 at 144. On April 10, 2017, Southwest notified Ms. McDowell that her approved FMLA leave had expired. *Id.* at 146.

After receiving that notice, Ms. McDowell asked for an extension because she was "still undergoing treatment for the serious medical condition for which

4

[her] FMLA claim supported" and she believed her leave should have lasted until May. *Id.* at 148. While Southwest initially denied that request, her leave was eventually approved. Dkt. 43-1 ¶ 6.

I.   **Southwest's Responses**

Southwest has designated evidence demonstrating that when Ms. McDowell filed a complaint, it responded by investigating the allegations. Dkt. 34 at 4-10. Ms. McDowell does not dispute Southwest's account of its responses to her complaints but argues that Southwest's responses were insufficient. Dkt. 43 at 8-9. Because the Court grants summary judgment on the basis that Ms. McDowell cannot establish that she was subjected to an actionable hostile environment, the Court does not address Southwest's alternative basis for summary judgment.

J.   **Procedural History**

On June 19, 2017, Ms. McDowell sued Southwest alleging it discriminated against her because she is a woman and then retaliated against her when she filed her EEOC charge. Dkt. 1-1 ¶ 1. Southwest moved for summary judgment on both claims. Dkt. 33.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp.*

5

*v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

**III.
Analysis**

Title VII makes it an unlawful employment practice for an employer to discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment, because of, among other things, the individual's sex. 42 U.S.C. § 2000e-2(a)(1). This includes "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Title VII also prohibits an employer from retaliating against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" conducted under Title VII. *Id.* § 2000e–3(a). Southwest argues it is entitled to summary judgment because the incidents identified by Ms. McDowell do not rise to the level of a hostile work environment and she cannot show that her EEOC charge led to any adverse employment actions. Dkt. 34.

### A. Ms. McDowell's Sexual Harassment Claim

#### 1. Incidents covered by Ms. McDowell's EEOC charge

Before considering if Ms. McDowell's hostile work environment claim can survive summary judgment, the Court must determine which incidents of alleged harassment are within the scope of the claim. Southwest argues that the Court can only consider incidents Ms. McDowell raised in her EEOC charge. Dkt. 34 at 11-14. Ms. McDowell argues that the scope of the Court's review is "an issue of fact" not proper for summary judgment. Dkt. 43 at 7-8.

Before filing suit under Title VII, an employee must exhaust all administrative remedies. 42 U.S.C. § 2000e–16(c); *Chaidez v. Ford Motor Co.*, -- F.3d--, No. 18-2753, 2019 WL 4050996, at \*3 (7th Cir. Aug. 28, 2019). To satisfy this requirement, a plaintiff must file a charge of discrimination with the EEOC before suing a defendant for that discrimination in court. 42 U.S.C. § 2000e-5(f)(1). The EEOC charge gives the employer adequate notice about the claim, and it gives the EEOC and the employer an opportunity to resolve the dispute without involving the court. *Chaidez*, 2019 WL 4050996, at \*3.

Once an employee brings a charge of discrimination to the EEOC and receives a right-to-sue letter, the employee may bring a suit in federal court only for those claims that were included in the EEOC charge or claims that are "like or reasonably related to the allegations of the charge and likely to grow out of such allegations." *Id.* (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)). Claims are "like or reasonably related" when (1) there is a reasonable relationship between the allegations in the EEOC charge

7

and the allegations in the complaint and (2) "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)); *see also Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011). In order to be reasonably related, the EEOC charge must describe the same conduct and implicate the same individuals as those in the complaint. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2015).

Here, Incidents # 1 through # 4 were included in Ms. McDowell's EEOC charge while Incidents # 5 through # 9 (the "Additional Incidents") were not. The Court may therefore consider the Additional Incidents only if they are reasonably related to the allegations in the EEOC charge.

There is no reasonable relationship between the Additional Incidents and the incidents described in the EEOC charge—Incidents # 1 through # 4— because they do not describe the same conduct or implicate the same individuals. The Additional Incidents involve a customer, a flight attendant, and pilots who were not identified in or implicated in the EEOC charge. Dkt. 35-1 at 118-20. Moreover, the conduct alleged in the Additional Incidents is different from the conduct alleged in Incidents # 1 through # 4. The Additional Incidents involve different individuals who are alleged to have engaged in different conduct, so they are not reasonably related to the claims Ms. McDowell brought in her EEOC charge. *See Moore*, 641 F.3d at 256 (allegations were not reasonably related when they alleged different conduct);

*Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (allegations were not reasonably related when they implicated different individuals); *Chaidez*, 2019 WL 4050996, at *3.

The Additional Incidents also cannot reasonably be expected to grow out of an EEOC investigation of the four incidents in the charge. Three of the Additional Incidents occurred six months or more after Ms. McDowell filed her charge, so an investigation could not have revealed them. *See Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (finding that the plaintiff did not exhaust her administrative remedies because the conduct alleged in the complaint occurred after she filed her EEOC charge). And while her allegation against the pilot (Incident # 5) occurred before her charge was filed, any EEOC investigation would not have revealed this conduct because Ms. McDowell never reported it to anyone. Dkt. 35-1 at 118. The only remaining incident—where a passenger reached for a bag of peanuts (Incident # 6)—could not have grown out of an investigation of whether Southwest employees sexually harassed Ms. McDowell. *Id.*

While the charge and the complaint generally assert the same kind of discrimination, that's not enough. *Chaidez*, 2019 WL 4050996, at *4. In *Cheek*, the plaintiff filed a charge with the EEOC claiming she was a victim of sex discrimination because her employer required her to pay costs that her male coworkers did not bear. 31 F.3d at 500. In her complaint, she again alleged sex discrimination but gave a different reason—her employer assigned less profitable sales routes to women. *Id.* at 501. The Court recognized that

9

both claims alleged sex discrimination but held that the plaintiff had not exhausted her administrative remedies, and thus the claim was barred, because the allegations in the EEOC charge did not allege the same conduct or implicate the same individuals as the allegations in the complaint. *Id.* (citing cases); *see also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (when the plaintiff alleged five incidents of discrimination in her complaint but only described two of them in her EEOC charge, the court held that it would not consider the unrelated omitted incidents).

Under binding precedent, the Court must confine its analysis to the four incidents described in Ms. McDowell's EEOC charge. *Whitaker v. Milwaukee Cty., Wis.*, 772 F.3d 802, 804 (7th Cir. 2014) (holding that courts "cannot consider" matters "outside the scope of [the] EEOC charge"); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (stating that claims in a complaint that are not raised in an EEOC charge are "barred."); *see also Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) (the plaintiff alleged six incidents of retaliation, but the court properly considered only incidents raised in the EEOC charge). Southwest had warning that Ms. McDowell might raise these incidents in a lawsuit, and the parties had an opportunity to resolve them without court intervention. *Chaidez,* 2019 WL 4050996, at *3.[1]

---

[1] Southwest also argues that the Court should not consider Incident # 1 because it occurred 300 days before Ms. McDowell filed her charge with the EEOC. The Court need not belabor this argument, however, because Southwest is entitled to summary judgment even after considering Incident # 1.

### 2. Do the incidents of alleged sexual harassment amount to a hostile work environment?

Sexual harassment that is severe or pervasive enough to affect the terms and conditions of employment is actionable under Title VII. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78 (1998); *Swyear v. Fare Foods Corp.,* 911 F.3d 874, 881 (7th Cir. 2018). At summary judgment, this requires Ms. McDowell to designate evidence from which a trier of fact could conclude that (1) she was subject to unwelcome harassment, (2) the harassment was based on her sex, (3) the harassment was so severe or pervasive as to alter the conditions of her employment and create a hostile working environment, and (4) there is a basis for employer liability. *Johnson v. Advocate Health & Hosps. Corp.,* 892 F.3d 887, 900 (7th Cir. 2018).

Southwest argues that Ms. McDowell cannot meet the third element because the four incidents described above were not "severe or pervasive enough to satisfy the hostile work environment standard." Dkt. 34 at 14. In order to meet the third element of a hostile work environment claim, a workplace must be "so pervaded by discrimination that the terms and conditions of employment were altered." *Vance v. Ball State Univ.,* 570 U.S. 421, 427 (2013). The behavior need not make the workplace "hellish." *Jackson v. Cty. of Racine,* 474 F.3d 493, 500 (7th Cir. 2007). But it must be more than offhand comments and isolated incidents. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998). In total, to amount to a change in the terms and conditions of employment, the "conduct must be extreme." *Id.*

11

When determining whether workplace discrimination is extreme enough to create a hostile work environment, the Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alamo v. Bliss*, 864 F.3d 541, 549–50 (7th Cir. 2017) (citing *Harris*, 510 U.S. at 23). No single factor is determinative. Rather, the Court must "look to the totality of the circumstances and ask whether everything together constitutes a hostile or abusive environment." *Swyear*, 911 F.3d at 881. Here, the designated evidence is insufficient to create a triable issue as to whether the conduct identified in the EEOC charge (Incidents # 1 through # 4) was severe or pervasive enough to alter the terms and conditions of Ms. McDowell's employment.

### a. The frequency of the discriminatory conduct

The four incidents here over a period of approximately a year and a half (Incidents # 1 through # 4) are not enough to constitute frequent harassment. *See Filipovic v. K & R Exp. Sys., Inc.*, 176 F.3d 390, 398 (7th Cir. 1999) (holding that four national-origin comments made over the course of more than a year "were too infrequent" to render the plaintiff's hostile work environment claim actionable). Similarly, isolated and sporadic incidents, unless they are extremely serious, do not constitute an actionable hostile environment. *Faragher*, 524 U.S. at 788; *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (holding that eight sexual comments made by a

handful of individuals over several years "were too isolated and sporadic to constitute severe or pervasive harassment").

### b. The severity of the conduct.

The behavior Ms. McDowell described was not severe enough to constitute a legally cognizable hostile work environment under Title VII. Posters of provocatively dressed female flight attendants (in contrast to professionally dressed men) have been found insufficient to alter the terms and conditions of employment. *See E.E.O.C. v. Int'l Profit Assocs., Inc.*, No. 01-c-4427, 2008 WL 4876860, at *6 (N.D. Ill. July 14, 2008) (holding that posters of women in bikinis in the workplace was not enough to constitute a hostile work environment).

Three of the other incidents involve suggestive statements: (1) a co-worker saying he could make Ms. McDowell have an orgasm (Incident # 1), (2) the statement, "Mercedez. I own one and it rides well" (Incident # 3), (3) and asking, "are you giving away kisses?" (Incident # 4). Mild sexual statements are not usually enough to constitute a hostile work environment. *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 713-14 (7th Cir. 2017) (comments about revealing outfits and frequently asking the plaintiff if she had pregnancy plans did not amount to a hostile work environment). For example, in *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 977–78 (7th Cir. 2000), the plaintiff's supervisor asked her if she would show him pictures of her wearing something from Fredricks of Hollywood, showed her a book with pictures of women in bondage and black leather, and asked about her outfits.

13

The court affirmed dismissal of the discrimination claim, finding that some of the comments were "suggestive or even offensive, but not so offensive as to constitute actionable harassment." *Id.* at 978.

The Seventh Circuit has found comments that were more sexually explicit and offensive than those alleged by Ms. McDowell not sufficiently severe to create a hostile work environment. In *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 841 (7th Cir. 2009), an employee said the plaintiff was "made for the back seat of a car" and looked like a "dyke." And in *Patt*, 280 F.3d at 754, a co-worker made eight gender-related comments—including the statement that "the only valuable thing to a woman is that she has breasts and a vagina." In both cases, the Seventh Circuit found that the statements were not severe or pervasive enough to constitute a hostile environment.

Ms. McDowell identifies one incident involving physical contact—when a pilot "placed his hand on her buttock" (Incident # 4). Dkt. 43 at 4. But under Seventh Circuit precedent, such conduct occurring in isolation is not "severe" for purposes of constituting a hostile work environment:

> Cumulatively or in conjunction with other harassment, such acts might become sufficiently pervasive to support a hostile environment claim, but if few and far between they typically will not be severe enough to be actionable in and of themselves. A hand on the shoulder, a brief hug, or a peck on the cheek lie at this end of the spectrum. Even more intimate or more crude physical acts— a hand on the thigh, a kiss on the lips, a pinch of the buttocks— may be considered insufficiently abusive to be described as "severe" when they occur in isolation.

*Swyear*, 911 F.3d at 882 (quoting *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000)).

### c. Whether the conduct was physically threatening or humiliating, or mere offensive utterances

Incidents # 1 through # 4 involve offensive comments implying that various employees wanted to kiss Ms. McDowell, lay on her lap, or have sex with her. While the comments were offensive, they are not of a nature that altered the conditions of her employment. *See Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (granting summary judgment for the employer despite the plaintiff's supervisor calling the plaintiff "hot," making grunting sounds when she wore a skirt, asking "all pretty girls [to] run around naked," and making an obscene sexual gesture).

### d. Whether the incidents unreasonably interfered with Ms. McDowell's work performance

The alleged incidents of harassment did not unreasonably interfere with Ms. McDowell's work performance. While Ms. McDowell complained that these incidents caused her anxiety and "a sense of uncertainty and uneasiness" when working with male coworkers, dkt. 35-1 at 124, she designated no evidence showing that the incidents significantly interfered with her ability to perform her job. Dkt. 35-1 at 17:23-25; dkt. 43-1 ¶ 2; *see Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 601 (7th Cir. 2014) (holding that a plaintiff did not provide sufficient evidence of a hostile work environment in part because "the alleged harassment did not interfere with [the plaintiff's] work performance").

15

### e. Conclusion

Considering the totality of the circumstances, while Ms. McDowell understandably found the alleged misconduct unwelcome and offensive, it was not pervasive or severe enough to constitute a cognizable claim under Title VII. No reasonable jury could find that the incidents Ms. McDowell described altered the terms and conditions of her employment.

While Ms. McDowell argues that "[i]t seems obvious" that these incidents constitute a hostile work environment, dkt. 43 at 7, the Court must evaluate the behavior from an objective perspective. Liability under Title VII "has limitations, and Title VII was not designed to become a 'general civility code.'" *Alamo*, 864 F.3d at 550 (quoting *Faragher*, 524 U.S. at 788). Although offensive, "vulgar banter, tinged with sexual innuendo of coarse or boorish workers" generally does not alter the terms and conditions of employment under Title VII. *Swyear*, 911 F.3d at 881 (citation omitted). Therefore, the Court **GRANTS** Southwest summary judgment on Ms. McDowell's hostile work environment claim.

### B. Ms. McDowell's Retaliation Claim

Southwest also moves for summary judgment on Ms. McDowell's retaliation claim. To make a prima facie claim for retaliation, Ms. McDowell must demonstrate (1) that she engaged in statutorily protected activity; (2) that her employer took a materially adverse action against her; and (3) that the protected activity and the adverse action are causally connected. *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018).

Ms. McDowell claims she engaged in protected activity when she filed her charge with the EEOC and that she suffered two adverse actions after Southwest changed her work schedule and denied her FMLA leave. Dkt. 43 at 9-10; dkt. 1-1 ¶14. Southwest argues Ms. McDowell's retaliation claim fails because there is no designated evidence from which a trier of fact could find a causal relationship between her protected activity and these actions.

In order to satisfy the third element of a retaliation claim, Ms. McDowell must establish that "the protected activity was the but-for cause of the adverse action." *Mollet v. City of Greenfield*, 926 F.3d 894, 897 (7th Cir. 2019). In other words, she must demonstrate that she would not have been initially denied FMLA leave and her schedule would not have changed if she did not file her charge with the EEOC. *Id.*

Neither of the two allegedly adverse actions satisfy this but-for requirement. On May 11, 2016, Southwest told Ms. McDowell that her approved FMLA leave would end in March 2017. Dkt. 35-1 at 144. Ms. McDowell's EEOC charge could not have caused her leave to terminate on that date because she filed her charge three months *after* she was notified of the termination date.

And Ms. McDowell's schedule-change claim is based entirely on suspicious timing in that one happened after the other. Typically, "evidence regarding suspicious timing, without more, is generally insufficient to support a reasonable inference of retaliation." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012). Here, Ms. McDowell has failed to provide any

17

evidence, or even the date when her schedule changed, that would allow the inference of retaliation based on suspicious timing.

Ms. McDowell has failed to provide evidence of causation, so the Court **GRANTS** Southwest summary judgment on Ms. McDowell's retaliation claim.

## IV.
## Conclusion

The Court **GRANTS** Southwest's Motion for Summary Judgment. Dkt. [33]. Final judgment will issue in a separate entry. Because the Court finds Southwest is entitled to summary judgment even when Ms. McDowell's affidavit is considered, Southwest's motion to strike is **DENIED** as moot.

**SO ORDERED.**

Date: 9/10/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Michael A. Moffatt
LITTLER MENDELSON PC
mmoffatt@littler.com

Brian Lee Mosby
LITTLER MENDELSON, P.C.
bmosby@littler.com

Jennifer L. Romaniuk
LITTLER MENDELSON, P.C. (Indianapolis)
jromaniuk@littler.com

Christopher Kenneth Starkey
STARKEY LAW OFFICES
starkeyck@msn.com